UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LARRY BELL, | Case No. 23-10074 |
|     Plaintiff, | Hon. F. Kay Behm |
| v. | United States District Judge |
| SHANA STARKS, | Hon. David R. Grand |
| | U.S. Magistrate Judge |
|     Defendant. | |
| _____ / | |

**OPINION AND ORDER ACCEPTING AND ADOPTING THE MAGISTRATE JUDGE'S JANUARY 21, 2025, REPORT AND RECOMMENDATION (ECF No. 62) AND DENYING DEFENDANT'S MOTION FOR <u>SUMMARY JUDGMENT (ECF No. 49)</u>**

## I.    INTRODUCTION

This matter is before the court on Defendant's Motion for Summary Judgment (ECF No. 49), and Magistrate Judge Grand's Report and Recommendation on that Motion (ECF No. 62). For the reasons set out below, the court **ACCEPTS** and **ADOPTS** the Report and Recommendation in full and thus **DENIES** Defendant's Motion for Summary Judgment.

## II.    PROCEDURAL HISTORY & FACTUAL BACKGROUND

1

Although the court reviews proper objections to a dispositive report and recommendation under a de novo standard of review, the purpose of the Federal Magistrate's Act, 28 U.S.C. § 636, is in part to reduce duplicative work and conserve judicial resources. *Owens v. Comm'r of Soc. Sec.*, No. 1:12-CV-47, 2013 WL 1304470, at *3 (W.D. Mich. Mar. 28, 2013) (citing, e.g., *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)). The court has reviewed the record and largely repeats the facts as the Magistrate Judge has described them. *See* ECF No. 62, PageID.453. In summary:

> *Pro* se plaintiff Larry J. Bell ("Bell"), an incarcerated person, brings this action under 42 U.S.C. §1983 against Corrections Officer Shana Starks ("Starks"), alleging that she acted with deliberate indifference to his serious medical needs, in violation of the Eighth Amendment. (ECF No. 14). Specifically, Bell alleges that on September 4, 2022, when he was housed at the Woodland Center Correctional Facility, he informed Starks that he was having suicidal thoughts, and that Starks responded, "You should make the world a better place by going on and kill yourself then." Bell claims that he then cut himself badly enough that he became unresponsive. Another corrections officer who was "making his rounds" observed Bell and asked Starks to get help, but Starks allegedly responded, "just shut the door [to Bell's cell]."

ECF No. 62, PageID.453-54.

In his amended complaint,

> Bell also asserts claims of negligence and intentional infliction of emotional distress, and asks for substantial compensatory and punitive damages.

*Id.* at 454.

### A.   Bell's allegations

> Bell alleges that, in September 2022, he was "being treated for mental illness" at [MDOC's Woodland Center Correctional Facility ("WCC")], which is "a facility specifically designated for that purpose." (ECF No. 14, PageID.46).  He alleges that, on September 4, 2022, Starks "did a round" of his unit "at approximately 10:30 p.m.," although "[t]he exact time [of Starks' round] is not presently known." (*Id.*).  Bell alleges that, while Starks was rounding his unit, he notified her that "he was having suicidal thoughts and that he was overwhelmed by urges to act upon those thoughts." (*Id.*).  Starks allegedly responded, "You should make the world a better place by going on and kill yourself then," and "proceeded to walk away from [Bell's] cell and occupied herself by playing on the computer, with no concern for [Bell's] mental disability and safety." (*Id.*).  Bell alleges that "[a]s soon as [Starks] walked away from [his] cell door, he severely cut himself," and "[o]ther prisoners who were aware of this even began kicking their cell doors to draw attention to [Bell's] critical need for medical attention," but Starks "refused to respond." (ECF No. 14, PageID.47).  Bell eventually "became unresponsive from the loss of blood and need for sutures." (*Id.*).

> Bell alleges that, "[o]n that same night, C/O [Durand] Jones was working with [] Starks," and "[a]s C/O Jones was making his rounds, he became aware of [Bell's] condition and opened his cell door." (*Id.*). Jones allegedly "urgently told [] Starks that they needed to get [Bell] immediate medical attention," but Starks replied, "Just shut the door." (*Id.*). About a minute or so later, Jones "called over his radio a code blue for available assistance to a plea of 'unresponsive prisoner.'" (*Id.*). Bell alleges that "[i]f not for C/O Jones' intervention, [Bell] would have very likely bled to death." (*Id.*).

*Id.* at 455.

### B. Record Evidence

WCC is the facility which "presently houses the Inpatient Mental Health and Crisis Stabilization Program for MDOC." (ECF No. 49-2, PageID.265). The Crisis Stabilization Program ("CSP") is "a referral based program for prisoners experiencing a serious mental health crisis," and the "intention is to diagnose, treat and stabilize the prisoners." (*Id.*). Between July 29, 2014, and November 14, 2022, Bell had been sent to WCC on at least eight occasions for treatment. (ECF No. 49-3). On August 23, 2022, Bell was sent to the WCC for the eighth time, and he was incarcerated there during the time of the incident on September 4, 2022. (*Id.*, PageID.268).

While at WCC, Bell was evaluated by a Qualified Mental Health Professional ("QMHP") and placed on an Intermediate Management Plan on August 29, 2022. (ECF No. 49-7, PageID.322). The Plan

4

states that Bell was assessed to be an "INTERMEDIATE RISK" for suicide or self injury, and so the "Frequency of Observation" for Bell should be "Routine," the types of "Behaviors to Observe and Report" include "Any comments, threats, or acts suggestive of possible harm to self or attempt to kill self . . .," and staff should "[d]iscourage any preoccupation with self-harm or suicide and encourage focusing on positive thoughts," and "[r]efer to QMHP and Treatment for further assessment and intervention." (*Id.*).

The WCC's "Unit Logbook" reflects that, on September 4, 2022, Starks made rounds of Bell's unit at 7:30 p.m., 8:30 p.m., and 9:30 p.m. (ECF No. 49-5, PageID.283-84). Thereafter, correctional officer Durand Jones made rounds of Bell's unit at 10:00 p.m. and 10:30 p.m. (*Id.*, PageID.284). The Logbook shows an entry made by Starks at 10:40 p.m., which states:

> Prisoner Ford [] notified Officer Jones that prisoner Bell [] stated he was bleeding. Officer Jones reported to cell 19 and observed prison [sic] Bell [] with self inflicting wounds to his arm area and was bleeding. Prisoner appeared to be unresponsive. Control Center was notified by C/O Starks and [] code blue was called over the radio by me C/O Starks. [] Prisoner Bell [] seen by healthcare and sent out via ambulance.

(*Id.*, PageID.285).

For reference, the logbook entries are included in this opinion:

5



Logbook, page 1 (preceeding Bell's emergency).  ECF No. 49-5, PageID.284.

Logbook, page 2 (including entry describing Bell's emergency).  ECF No. 49-5, PageID.285.

In an affidavit, Jones explained the logbook's significance (ECF No. 51-1, PageID.367):

6

> Every time that I begin a round, I write in the unit logbook that I have made a round and the time that I started the round. On the unit logbook for September 4, 2022, I completed rounds at 1830 (6:30 p.m.), 1900 (7:00 p.m.), 2000 (8:00 p.m.), 2200 (10:00 p.m.), and 2230 (10:30 p.m.). . . . At the "2040" (10:40 p.m.) time in the logbook, it notes that I was notified by Prisoner Ford [] that Prisoner Bell [] was bleeding. I went to the cell and saw that Bell was bleeding from wounds on his arms. At that time, Bell appeared to be unresponsive. I notified Officer Starks to make the code blue call to the control center and healthcare was sent to our unit and Bell was ultimately transported to a hospital. . . . (*Id.*, PageID.367-68).

ECF No. 62, PageID.457-58.

> A "Critical Incident Participant Report" authored by Jones states that, at 10:42 p.m., he reported to inmate Bell, where he observed Bell bleeding from wounds on his arms. (ECF No. 49-7, PageID.302). Bell appeared to be unresponsive, and Jones notified Starks to notify the Control Center. (*Id.*).

ECF No. 62, PageID.459.

Starks also filled out a Critical Incident Report, which largely agrees with the facts in Jones' report regarding what happened with Bell after 10:40p.m. ECF No. 49-7, PageID.296. Several other reports were filed as well, which also agree on those basic facts. *Id.* at PageID.297-318.

7



Picture taken by Jones of Bell's cell after he was taken for treatment. ECF No. 49-7, PageID.324.

Bell was taken to University of Michigan Hospital and treated for his injuries, which included swallowing the metal piece he used to cut himself. ECF No. 49-7, PageID.294.

Magistrate Judge Grand issued a Report and Recommendation on January 21, 2025 on the motion for summary judgment (ECF No. 62), and recommends that this court grant the **DENY** the motion. The court did not hold a hearing on the motion, finding that the issues were

adequately presented in the briefs and record. ECF No. 62, PageID.454. Defendant Starks has filed objections to the Report and Recommendation (ECF No. 64). The court has fully reviewed the record.

### III. STANDARD OF REVIEW

A party may object to a magistrate judge's report and recommendation on dispositive motions, and a district judge must resolve proper objections under a de novo standard of review. 28 U.S.C. § 636(b)(1)(B)-(C); Fed. R. Civ. P. 72(b)(1)-(3). This court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id*. "For an objection to be proper, Eastern District of Michigan Local Rule 72.1(d)(1) requires parties to 'specify the part of the order, proposed findings, recommendations, or report to which [the party] objects' and to 'state the basis for the objection.'" *Pearce v. Chrysler Grp. LLC Pension Plan*, 893 F.3d 339, 346 (6th Cir. 2018). Objections that dispute the general correctness of the report and recommendation are improper. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

9

Moreover, objections must be clear so that the district court can "discern those issues that are dispositive and contentious." *Id.* (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (explaining that objections must go to "factual and legal" issues "at the heart of the parties' dispute"). In sum, the objections must be clear and specific enough that the court can squarely address them on the merits. *See Pearce*, 893 F.3d at 346. And, when objections are "merely perfunctory responses . . . rehashing . . . the same arguments set forth in the original petition, reviewing courts should review [a Report and Recommendation] for clear error." *Ramirez v. United States*, 898 F.Supp.2d 659, 663 (S.D.N.Y. 2012); *see also Funderburg v. Comm'r of Soc. Sec.*, No. 15-10068, 2016 WL 1104466, at *1 (E.D. Mich. Mar. 22, 2016) (Hood, J.) (noting that the plaintiff's objections merely restated his summary judgment arguments, "an approach that is not appropriate or sufficient").

## IV. ANALYSIS

Starks brings two objections in response to the Magistrate Judge's report and recommendation. First, she asserts that the R&R

10

improperly found that Bell has established a genuine issue of fact as to his timeline of events and therefore cannot establish a constitutional violation. Second, she argues that the R&R improperly found that Starks is not entitled to qualified immunity "for the reason that Bell has not created a genuine issue of material fact that Starks violated any of his constitutional rights." ECF No. 63, PageID.488.

Up front, the second objection is not a proper objection. Although labeled as an objection to the recommended denial of qualified immunity, it does not challenge the finding that, assuming that Bell *could* establish a constitutional violation, then Stark's actions would not be entitled to qualified immunity. *See* R&R, ECF No. 62, PageID.470 (a jury could find that Starks demonstrated deliberate indifference to Bell's serious medical need, and if that were the case, then that act of disregarding his medical need would violate clearly established law). The objection instead only challenges the recommended denial of qualified immunity on the grounds that there was no constitutional violation – a conclusion that is entirely dependent on the first objection. The court therefore **OVERRULES** the second objection and focuses only on the substance of the first objection: whether there is a question

11

of material fact as to whether Starks demonstrated deliberate indifference to Bell's serious medical needs, based in particular on whether a reasonable jury could accept Bell's version of the events.

### A.     R&R Conclusions and Objection

There is no objection, at this step, to the R&R's conclusion that Bell was struggling with suicidal thoughts, and that he informed Starks of that.  ECF No. 62, PageID.467.  There is no dispute at all that the incident took place in WCC, which is the MDOC facility specifically designated for handling and treating inmates experiencing serious mental health crises, such as Bell.  The Magistrate Judge found that Bell raised a material dispute as to whether Starks exhibited deliberate indifference to Bell's serious medical needs by disregarding Bell's complaints that he was having suicidal thoughts and urges to cut himself, and by encouraging Bell to act on suicidal impulses to harm himself.  *See Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001); *Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 483 (6th Cir. 2020); ECF No. 62, PageID.464-65.

Starks' objection to that conclusion comes down to whether Bell's testimony could be believed by a reasonable jury: that Starks walked by

Bell's cell, told him that he ought to kill himself, and that Bell subsequently did cut himself within a short time period of that statement – when the officers' logbook shows that Starks' last round was at 9:30p.m. and Bell was found bleeding at 10:40p.m. The R&R found Bell's testimony sufficiently consistent to raise a fact issue:

> Bell's statements that Starks told him to kill himself during the 10:30 p.m. round demonstrates that he could not remember the exact timing of events during the approximately one-hour span between when Starks allegedly told him to kill himself after she started her last round at 9:30 p.m., and when officer Jones found him bleeding and unconscious in his cell at 10:40 p.m., which is hardly evidence that "completely contradicts" Bell's fundamental claim that Starks knew he needed serious medical attention, yet disregarded that need. To be clear, the Court is not saying the alleged discrepancy is irrelevant to the merits of Bell's claim. Certainly, Starks' proffered evidence may bear on Bell's credibility as to his recollection of the events, and as to what did and did not take place. But those issues are for a jury to consider and decide, and are not properly before the Court at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (stating that, at the summary judgment stage, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . .").

ECF No. 62, PageID.468.

13

In Starks' view, she "presented contemporary record evidence that blatantly contradicted Bell's timeline such that no reasonable jury could believe it and this Court should not adopt Bell's version of the facts." ECF No. 64, PageID.485. According to her, Starks' only round during the relevant timeframe was completed at 9:30p.m., an entire hour before Bell (in her view) cut himself. Bell has testified that he cut himself "as soon as she walked away" from his cell. *Id.* (citing Amended Complaint, ECF No. 14, PageID.47). Ultimately, says Starks, these records show that she "was nowhere near his cell when Bell injured himself, and had not been near him for over an hour." ECF No. 64, PageID.487.

Starks' objection rests, therefore, almost entirely on the record evidence that Starks was not on rounds at what she says is the relevant time period. The primary evidence for this is the logbook:

Logbook entries



Starks ("SS") did rounds at 8:30pm and 9:30pm

Jones ("DJ") did rounds at 10pm and 10:30pm

She also relies on Officer Jones' testimony as to when he did rounds and how he did rounds (ECF No. 49-6, PageID.289), and on the affidavit of Kaitlin Reed, another corrections officer who reviewed Bell's internal grievance request, and who avers that the surveillance video of the hallway at 10:30pm did not show Starks near Bell's cell (ECF No. 49-10, PageID.349).

B.   Conclusions of the court

The court agrees with the Magistrate Judge's evaluation of the factual record in the R&R. There is no incontrovertible evidence showing exactly when Bell cut himself, only that he was discovered around 10:40pm after another prisoner notified Jones that Bell was bleeding. *See* ECF No. 49-5, PageID.285. While discrepancies between Bell's testimony and other record evidence exist, it is possible that Bell

15

cut himself well before 10:40pm. As the Magistrate Judge pointed out, Jones testified as to how he does rounds generally (*i.e.*, "I conduct rounds in the unit by stopping by each cell housing a prisoner to ensure that there is a "living breathing" body," and "that each prisoner is in their cell and are not experiencing any health emergency"), but he does not speak to any *specific* observations of and/or interactions with Bell during his rounds on September 4, 2022. ECF No. 49-6, PageID.289. As a result, the exact amount of time that passed between when Starks spoke to Bell, to Bell cutting himself, to Bell being found, is not critical. The point is that, if Bell is telling the truth about what Starks said to him, but does not have the time quite right on when exactly each officer was on rounds, the sequence could still be enough to prove his case for deliberate indifference even if the entire incident took place over about an hour. While discrepancies between his testimony and other evidence are likely relevant information to consider, these differences (and Bell's credibility) are for a jury to weigh. ECF No. 62, PageID.468.

Defendant objects to this conclusion because, she says, the record evidence contradicts Bell's timeline, but a reasonable jury could choose not to credit Starks' evidence as conclusive. Assume, as Defendant

16

does, that Bell was in fact only bleeding for a few moments before other prisoners alerted Jones and Bell was found, around 10:40p.m. Defendant focuses much of her argument on Bell's testimony that he cut himself as soon as Starks walked away – and, Starks argues, she was not rounding at any time near 10:30pm, and so his version simply cannot be true. *See, e.g.*, ECF No. 63, PageID.474. Defendant's version of events thus relies heavily on the logbook as an authoritative accounting of where exactly each officer was at each time. Her argument assumes that whenever she is not on rounds, she is in an office or control room, or at least nowhere near Bell. But that is not the only interpretation available of the logbook, and it is certainly not the interpretation which draws all inferences in Bell's favor, as the court must at this stage. The logbook accounts for when rounds were made or when certain activities occurred, but it does not make any indication about what officers were doing when not on rounds. Is it possible that Starks walked by his cell while Jones was rounding on the other side, even if she herself was not performing a formal "round"?[1] Defendant

---

[1] For example, right beneath the 10:30pm rounds entry (by Jones), an entry with timestamp at 10:36pm ("2236") reads "Poa out Jamison [redacted] / Poa in Jackson [redacted]" and is initialed by Starks ("SS"). ECF No. 49-5, PageID.284.

17

has not pointed to any testimony explaining where Starks was. A jury could choose to accept Bell's testimony that, whatever the logbook says about when formal rounds happened, Starks walked by his cell "approximately" around 10:30p.m. As the Magistrate Judge pointed out, this conclusion is not precluded by the affidavit of Kaitlin Reed, who swore that she reviewed the video of the hallway and that "at" 10:30p.m., Starks was not in front of Bell's cell. ECF No. 49-10, PageID.349 (Reed's testimony); ECF No. 62, PageID.468 (R&R). Bell testified several times that he gave an *approximate* time, not an exact time, and Reed's affidavit does not indicate whether she reviewed any other times. *See* ECF No. 62, PageID.455. If Starks was never near Bell's cell at any point between, say, 10:20pm and 10:42pm (covering the moments before he is found bleeding), then evidence tending to prove that fact would be relevant at this stage, but evidence proving that has not been produced to the court. Further, a jury might not have to accept Reed's testimony at all, because that surveillance video has

---

Bell testified that Starks spoke to him after a "shift change for the POAs" in his deposition. *See* ECF No. 49-4, PageID.282. Even accepting the logbook's authoritative nature about Starks' location (the court does not), Defendant has not shown why the logbook entries would be "incontrovertible proof" that Bell's version of events is wrong.

18

not been produced. *See* Fed. R. Evid. 1002. At this stage, material factual questions remain, and those questions are sufficient to accept and adopt the Magistrate Judge's report and recommendation.

## V. CONCLUSION

In summary: the court **OVERRULES** both objections and **ACCEPTS** and **ADOPTS** the report and recommendation in full. Defendant's motion for summary judgment is therefore **DENIED**.

Although not addressed in any of the briefings on this motion, the court notes that the Motion for Summary Judgment is, in entirety, about Bell's Eighth Amendment claims. However, Bell also moved to bring claims for gross negligence and intentional infliction of emotional distress, which were not addressed in Defendants' motion. ECF No. 14, PageID.47. He was granted leave to file, and was ordered to refile, that proposed amended complaint, but never did. *See* ECF No. 16, PageID.61. Defendants nonetheless brought this motion relying on that amended complaint as his operative complaint, though they did not address his state law claims. *See, e.g.*, ECF No. 49, PageID.244. Their only answer filed thus far addresses ECF No. 1, but not ECF No. 14. ECF No. 26, PageID.89. To clarify the record as to Plaintiff's state law

claims and both parties' operative pleadings, it is **FURTHER ORDERED** that, if Defendants waive any objection to accepting Plaintiff's amended complaint at ECF No. 14 as his operative complaint, to file an answer to the amended complaint at ECF No. 14 within 14 days of entry of this order, or b) if Defendants are objecting to treating ECF No. 14 as Bell's operative complaint, including his state law claims, to **SHOW CAUSE** why this court should not treat that argument as waived by their reliance on ECF No. 14 in their motion and the lack of objections to the Magistrate Judge's treatment of ECF No. 14 as Bell's operative pleading, within 14 days of entry of this order.

The court will issue a scheduling order for remaining dates in the case.

**SO ORDERED**.

Date: March 5, 2025   s/F. Kay Behm
F. Kay Behm
United States District Judge