UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY BELL,                                Case No. 23-10074

    Plaintiff,                          Hon. F. Kay Behm
v.                                         United States District Judge

SHANA STARKS,                              Hon. David R. Grand
                                           U.S. Magistrate Judge
    Defendant.
_____ /

**OPINION AND ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT ON PLAINTIFF'S STATE LAW CLAIMS
(ECF No. 76)**

This matter is before the court on Defendant's Motion for Partial

Summary Judgment on Plaintiff's State Law Claims (ECF No. 76).  For

the reasons set out below, the court **GRANTS** the motion **IN PART**

and **DENIES** it **IN PART**.

**I.    PROCEDURAL HISTORY**

*Pro se* plaintiff Larry J. Bell ("Bell"), an incarcerated person,

brings this action under 42 U.S.C. § 1983 against Corrections Officer

Shana Starks ("Starks"), alleging that she acted with deliberate

indifference to his serious medical needs, in violation of the Eighth

Amendment.  On July 18, 2023, Bell moved to amend his original

1

complaint and attached a proposed amended complaint that included more detailed factual allegations along with two state law claims: gross negligence and intentional infliction of emotional distress.  ECF No. 14. The Magistrate Judge granted the motion; however, Bell failed to file the complaint as ordered.  After further consideration, this court directed that the proposed amended complaint be deemed operative. ECF No. 70, PageID.540.

On July 22, 2024, Starks filed a motion for summary judgment and qualified immunity.  ECF No. 49.  The Magistrate Judge subsequently found, and the court agreed, that a genuine issue of material fact existed with respect to Bell's Eighth Amendment claim. Specifically, a reasonable jury could conclude that Starks acted with deliberate indifference to Bell's serious medical needs in violation of clearly established law.  Accordingly, the court denied Starks' motion for summary judgment.  ECF No. 68.

In an effort to further narrow the issues for a potential trial, this court held that the Defendant should have the opportunity to move for judgment as to Bell's state law claims.  Therefore, it granted Defendant leave to file a second motion for partial summary judgment addressing

Bell's state law claims of gross negligence and intentional infliction of emotional distress.  *Id.*  This is that motion.

## II.    FACTUAL BACKGROUND

Woodland Center Correctional Facility ("WCC") houses the Inpatient Mental Health Crisis Stabilization Program ("CSP") for the Michigan Department of Corrections ("MDOC").  ECF No. 49-2, PageID.265.  The CSP is a referral-based program designed to diagnose and treat inmates experiencing serious mental health crises.  *Id.*

Bell was housed at the WCC between July 29, 2014, and November 14, 2022.  On August 23, 2022, Bell was admitted to WCC for the eighth time and was evaluated by a Qualified Mental Health Professional ("QMHP").  ECF No. 49-7, PageID.322.  The QMHP placed Bell on an Intermediate Management Plan and classified him as an "INTERMEDIATE RISK" for suicide or self-injury.  *Id.*  Under the plan, any comments or threats of possible self-harm or attempts to commit suicide are to be reported and referred to the QMHP.  *Id.*  Staff are instructed to discourage that behavior and encourage positive thoughts. *Id.*

3

Bell alleges that on September 4, 2022, he informed Starks that "he was having suicidal thoughts and that he was overwhelmed by urges to act upon those thoughts."  ECF No. 14, PageID.46.  Starks allegedly responded, "You should make the world a better place by going on and kill yourself then," and "proceeded to walk away from [Bell's] cell and occupied herself by playing on the computer, with no concern for [Bell's] mental disability and safety."  *Id.*  Shortly after, using a concealed razorblade, he severely cut himself.  *Id.*  According to Bell, other prisoners began kicking their cell doors to alert staff to his condition, but Starks refused to respond.  *Id.* at PageID.47.  Bell claims that another corrections officer observed his condition and told Starks that he urgently needed medical attention.  Starks replied, "Just shut the door," but soon after, the other officer called for medical attention. *Id.*  Bell was taken to University of Michigan Hospital and treated for his injuries, which included swallowing the metal piece he used to cut himself.  ECF No. 49-7, PageID.294.

Following this incident, Bell brought this action under 42 U.S.C. § 1983 against Starks alleging that she acted with deliberate indifference to his serious medical needs, in violation of the Eighth Amendment.

4

ECF No. 14.  In his amended complaint, Bell asserted two additional state law claims against Starks – gross negligence and intentional infliction of emotional distress.

## III.   PRIOR FINDINGS OF THE COURT

In its opinion and order adopting the Magistrate Judge's report and recommendation on Bell's Eighth Amendment claim, the court agreed that there is a genuine dispute of material fact in regard to Bell's Eighth Amendment claim.  As the Magistrate Judge noted, "It is insufficient to show that an official 'acted with deliberate indifference to some *possibility* of suicide, or even a *likelihood* of suicide.'  This distinction is critical 'because a finding of deliberate indifference requires a sufficiently culpable state of mind, which the Supreme Court has equated with criminal recklessness.'"  ECF No. 62, PageID.464 (quoting *Galloway v. Anuszkiewicz*, 518 F. App'x 330, 336 (6th Cir. 2013) (emphasis in original) (citing *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003)).  The Magistrate Judge found, and this court adopted, that "Starks was certainly aware that Bell was an inmate with serious mental health issues."  ECF No. 62, PageID.465.  Bell alleged he expressly told her multiple times that he was having suicidal thoughts

and urges to cut. *Id.* And Bell alleged that when he told her again later that night that he was *still* having thought" of suicide, she responded by telling him to just kill himself and make the world a better place. *Id.* at PageID.465-66. Taken together, these raised a genuine dispute as to whether Starks understood there to be a "strong likelihood" that Bell would act on his suicidal thoughts but instead decided to disregard it, and the court agreed that a reasonable jury could find that amounted to deliberate indifference to his serious medical need. *See id.*; ECF No. 68.

## IV.   STANDARD OF REVIEW

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The standard for determining whether summary judgment is appropriate is "whether the evidence

6

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and to do so must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the

jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004).  To fulfill this burden, the non-moving party only needs to demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

## V.   ANALYSIS

Under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), when a federal court is exercising supplemental jurisdiction over state law claims, "the outcome of the litigation in the federal court should be substantially the same" as it would be in state court.  *Felder v. Casey,* 487 U.S. 131, 151 (1988) (quoting *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945)).  Where a state's highest court has spoken to an issue, this court is bound by that decision unless it is convinced that the high court would overrule it if confronted with facts similar to those before it. *Bernhardt v. Polygraphic Co. of Am.*, 350 U.S. 198, 205 (1956). Moreover, where a state appellate court has resolved an issue to which

the high court has not spoken, federal courts should "treat [those] decisions . . . as authoritative absent a strong showing that the state's highest court would decide the issue differently." *Garrett v. Akron-Cleveland Auto Rental, Inc. (In re Akron-Cleveland Auto Rental, Inc.)*, 921 F.2d 659, 662 (6th Cir. 1990).

### A.   Gross Negligence

Bell asserts that Starks was grossly negligent when she ignored his call of distress and said, "You should make the world a better place by going on and kill yourself then" despite having knowledge of his mental illness, tendency to self-harm, and suicidal ideation.  Starks, however, asserts that Bell cannot sustain a state law gross negligence claim because, under binding state law, he is the most proximate cause of his own injuries.  For the reasons below, the court agrees and grants summary judgment in favor of Defendant on Plaintiff's gross negligence claim.

Michigan state law negligence claims against government officials proceed in two parts: first, whether the plaintiff has satisfied the elements of negligence, and second, whether governmental immunity applies.  It is undisputed that the Defendant is an MDOC employee and

could potentially be entitled to governmental immunity.  The standard

for governmental immunity varies depending on whether the plaintiff

pleaded a negligent tort versus an intentional tort.  *Odom v. Wayne

Cnty.*, 482 Mich. 459, 479-80 (2008); *Oliver v. Smith*, 290 Mich. App.

678, 684 (2010).  When determining whether an individual is protected

by immunity in a gross negligence suit, Michigan courts apply the

framework set out in the Government Tort Liability Act (GTLA), Mich.

Comp. Laws § 691.1407(2).  If the defendant was a) acting or reasonably

believed that they were acting within the scope of their authority, b)

engaged in the exercise or discharge of a governmental function, and c)

the defendant's "conduct does not amount to gross negligence that was

the proximate cause of the injury," governmental immunity applies.

*Odom*, 482 Mich. at 469.

The court jumps directly to the third and most substantial factor.

Plaintiff needs to prove both that the Defendant's conduct amounted to

gross negligence and that her conduct was the proximate cause of his

injury.  Historically, the phrase "the proximate cause" in this context

has led to some confusion.  *See Dedes v. Asch*, 446 Mich. 99, 118 (1994)

(finding "no evidence that the Legislature intended to dramatically

rewrite Michigan's common-law causation principles when it used the word 'the' between 'gross negligence' and 'proximate cause,'"), *overruled by Robinson v. City of Detroit*, 462 Mich. 439, 445 (2000).

For example, "[i]t is not uncommon that more than one proximate cause contributes to an injury." *Ray v. Swager*, 501 Mich. 52, 65 (2017). However, for purposes of gross negligence claims against government officials, the Michigan Supreme Court has held that "the proximate cause" under the GTLA means only "the *one* most immediate, efficient, and direct cause of the injury or damage." *Id.* (emphasis added); *see Robinson*, 462 Mich. at 462. This is because MCL § 691.1407(2)(c) protects conduct that is not grossly negligent or not "the proximate cause of the injury." The "Legislature's use of the definite article 'the' clearly evinces an intent to focus on one cause." *Robinson*, 462 Mich. at 459 (2000).

In *Robinson*, the personal representative of the decedent filed a lawsuit against police officers that were involved in the pursuit of a vehicle. *Id.* at 449. The decedent was an innocent passenger in the vehicle. The driver of the vehicle was spotted driving in a reckless manner which prompted the police officers to activate their lights. *Id.*

11

The driver of the vehicle, rather than stopping, fled from the police officers and then collided with a non-police vehicle.  *Id*.  Plaintiff alleged negligence on the part of the officers.  Ultimately, the Michigan Supreme Court held that "the one most immediate, efficient, and direct cause of the plaintiffs' injuries was the reckless conduct of the drivers of the fleeing vehicles."  *Id*. at 462.

Michigan's federal district courts have uniformly applied *Robinson* to hold that in prison suicide cases, the prisoner's own actions are "the" single most proximate cause of their suicide or attempted suicide. Thus, a gross negligence claim cannot lie against an officer, even where their conduct could be "a" proximate cause of their suicide.  Analogous to the instant case is *Whitley v. Michigan Dep't of Corr.,* No. 1:22-cv-448, 2022 U.S. Dist. LEXIS 205549 (W.D. Mich. Aug. 8, 2022), *report and recommendation adopted in part on other grounds*, No. 1:22-cv-448, 2022 U.S. Dist. LEXIS 205119 (W.D. Mich. Nov. 10, 2022).  In *Whitley*, plaintiff, the personal representative of the decedent's estate, sued the MDOC and MDOC employees for a violation of the Eighth Amendment for failure to take adequate steps to prevent a prisoner's suicide. Although the plaintiff did not plead a gross negligence claim, the

defendant spotted a latent state law negligence claim and the Magistrate Judge recommended that the court construe the complaint as though one has been pled.  There, the decedent had a history of mental illness for which he was prescribed medication and received psychiatric treatment.  *Id.* at *2.  Plaintiff alleged that that the decedent voiced an intention to commit suicide to the defendants and exhibited a "disheveled appearance, depressed mood, discouraged attitude . . . " *Id.* at *3.  Further, she alleged that the defendants knew, judging from his appearance and a handwritten suicide note, that the decedent was going to hang himself but failed to "address the risk and did not properly monitor [him], except during walk-by rounds performed, at most, once per hour." *Id.*  The court found that "the one most immediate, efficient, and direct cause" of decedent's death was the act of hanging himself using his bedsheet and thus, dismissed plaintiff's gross negligence claim.  *Id.* at *17; *see also Soles v. Ingham County*, 316 F. Supp. 2d 536, 546 (W.D. Mich. 2004) (holding that the decedent's own volitional act of self-harm was the proximate cause of his death), *aff'd on other grounds*, 148 Fed. App'x 418 (6th Cir. 2005); *Bradley v. City of Ferndale*, 148 Fed. App'x. 499, 514 (6th Cir. 2005) (applying *Robinson*,

finding that "the one most immediate, efficient, and direct cause of [the decedent's] death was his own act of hanging himself," and reversing denial of summary judgment).

Likewise, under the facts of the instant case, the Defendant's words are not "the one most immediate, efficient, and direct cause" of Bell's injuries.  Plaintiff cut himself with a razorblade he hid from his previous facility.  ECF No. 49-7, PageID.294.  Under binding precedent and the trend of authority in the district courts, Defendant is entitled to governmental immunity on Plaintiff's state law negligence claim.

## B.    Intentional Infliction of Emotional Distress

As with negligent torts, intentional tort claims against government officials proceed in two parts: first, whether the plaintiff has satisfied the elements of the tort, and second, whether the defendant is entitled to governmental immunity.  These inquiries may be addressed in either order.  The standard for governmental immunity is slightly different than it is for negligence claims.  For governmental immunity to apply, the Defendant must establish that (1) the employee's challenged acts were undertaken during the course of employment and that the employee was acting, or reasonably believed

she was acting, within the scope of her authority, (2) the acts were undertaken in good faith, and (3) the acts were discretionary, rather than ministerial, in nature. *Odom*, 482 Mich. 459, 461 (1985).

The court will first analyze the question of whether governmental immunity exists before jumping into the elements of the intentional tort. The court begins with the second and most substantial prong—whether the acts were undertaken in good faith.

The Sixth Circuit has held that a finding of deliberate indifference under the Eighth Amendment analysis is equivalent to gross negligence under Michigan law. *Lee v. Genesee County*, No. 16-13116, 2018 WL 5094079, at *13 (E.D. Mich. Aug. 15, 2018) (citing *Quigley v. Thai*, 707 F.3d 675, 686 (6th Cir. 2013), *report and recommendation adopted and overruled on other grounds*, *Lee v. Cnty. of Genesee*, No. 16-13116, 2018 WL 4478786, at *3 (E.D. Mich. Sept. 19, 2018)). "Gross negligence" has been defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). And "a governmental employee fails 'the good faith' standard under the second prong when they act maliciously, recklessly, capriciously, or willfully and corruptly." *Peterson v. Heymes*, 931 F.3d 546, 557 (6th Cir.

2019).  In light of this court's prior determination that Starks could have acted with deliberate indifference (ECF No. 68, PageID.516), there is likewise a material dispute of fact as to whether Starks acted in good faith, or in other words, whether she acted "maliciously, recklessly, capriciously, or willfully and corruptly." *Peterson*, 931 F.3d at 557 (6th Cir. 2019).  Even assuming the first and third prongs of the *Odom* test are satisfied, there still remains a genuine issue of material fact as to the second prong.  Accordingly, Starks is not entitled to governmental immunity on this claim.

Absent governmental immunity, Bell still must prove that he can satisfy the elements of an intentional infliction of emotional distress claim ("IIED").  To establish a prima facie case of IIED, the plaintiff must show four elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 602 (1985).  For conduct to be deemed extreme and outrageous, it has to have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 603.  This is generally a

16

question of law for the court.  *VanVorous v. Burmeister*, 262 Mich. App. 467, 481 (2004).  However, if reasonable minds may differ regarding whether the conduct was extreme and outrageous, the issue constitutes a question for the jury.  *Lewis v. LeGrow,* 258 Mich. App. 175, 197 (2003).  A defendant is generally not liable for "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."  *Id.* at 196. But a special relationship between the parties may affect what conduct may be deemed extreme and outrageous.  *See Apostle v. Booth Newspapers, Inc.*, 572 F. Supp. 897, 908 (W.D. Mich. 1983).  Language used by the defendant should be assessed in light of its surrounding context and any abuse of a special relationship (e.g. a merchant and customer) should be accounted for.  *Id.* at 907-908.  Indeed, extreme and outrageous conduct can arise when the defendant is aware that the plaintiff is "peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity."  Restatement (Second) of Torts § 46 cmt. f (1965).

The relationship between an inmate and correctional officer is one such special relationship.  Two cases, though not in Michigan, illustrate this point in the prisoner suicide context.  In *Mullin v. Balicki*, No. 11-

247, 2019 WL 2315044, at *11 (D.N.J. May 31, 2019), the plaintiff claimed that defendant repeatedly told decedent to kill himself after decedent requested psychiatric help for suicidal ideation. The defendant allegedly said to the decedent, "go ahead and hang yourself," "Shut up. You might as well kill yourself," and that "there was no psych available," so "I guess you have to kill yourself." *Id.* Shortly after, the decedent committed suicide by hanging. *Id.* The comments all occurred during the same shift and within a sufficiently short time frame to support a connection between the statements and act of suicide. Additionally, the defendant was aware of the decedent's susceptibilities to suicide and the danger the comments posed to him. The court found that reasonable minds could differ when deciding if the alleged statements meet the threshold of extreme and outrageous and as such, denied defendant's motion to dismiss. *Id.*

On the more extreme end, courts have also held that, as a matter of law, a person engages in extreme and outrageous behavior by not only making similar verbal statements, but also by providing the means by which the decedent ultimately took his own life. In *Anthony v. Blumhorst*, No. 21-435, 2022 WL 2967560, at *3 (S.D. Ill. Jul. 27, 2022),

plaintiff alleged that the officer defendants knew he was mentally ill and was on suicide watch yet decided to provide him with parts of a fingernail clipper and encouraged him to kill himself—or they would do it for him. *Id.* This caused the plaintiff increased anxiety and mental anguish, and the district court found that "threatening to kill a prisoner on suicide watch if he does not kill himself, and giving him tools to do so, is clearly outrageous behavior." *Id.*

Although not so extreme and outrageous to take the matter out of a jury's hands, Starks here is alleged, like in *Mullin*, to have mocked Bell's suicidal ideation, encouraged him to kill himself, and subsequently refused assistance after a serious act of self-harm.[1] Specifically, Bell alleges that after informing Starks that he was experiencing suicidal thoughts, she responded, "You should make the world a better place by going on and kill yourself then," despite knowing that he was being housed at WCC for that very reason. ECF No. 68, PageID.502. Bell further claims that he then became unconscious due to his injuries from his attempted suicide. *Id.* Shortly after, when

---

[1] To the extent that Starks still disputes that there is any question of fact as to whether she in fact did make those statements to Bell, ECF No. 76, PageID.586-87, the court has already explained why a reasonable, material dispute of fact exists on that point. ECF No. 68.

another corrections officer was making his rounds, he noticed Bell and asked Starks to get help, to which she allegedly responded, "just shut the door [to Bell's cell]." *Id.*

These allegations, if accepted as true, describe conduct that not only mocked Bell's mental health crisis, but egged it on and involved a refusal to respond to a suicide attempt. "Whether alleged conduct may be reasonably regarded as extreme and outrageous generally presents a question of law for the court." *VanVorous v. Burmeister*, 262 Mich. App. 467, 481 (Mich. App. 2004). However, where reasonable minds could differ on the issue of extreme and outrageous character, the question becomes one for the jury. *Lewis v. LeGrow,* 258 Mich. App. 175, 197 (Mich. App. 2003). While distinguishable from cases where the officer provided the inmate with the means to commit suicide, Starks' alleged actions bear similar hallmarks of extreme and outrageous conduct toward a vulnerable individual. Viewed in the light most favorable to Bell, a reasonable jury could find that Starks' conduct was extreme and outrageous.

The second element of an IIED claim—requiring either purposeful intent or recklessness—has been satisfied at this stage. This court has

already determined that there is a genuine issue of material fact as to whether Starks acted with deliberate indifference. In adopting the Report and Recommendation to Deny Defendant's Motion for Summary Judgment, this court held that there is a genuine dispute of material fact as to whether Starks knew or understood there to be a "strong likelihood" that Bell would harm himself and attempt to commit suicide, yet disregarded Bell's serious medical need. ECF No. 68. *See* ECF No. 62, Page ID.465. Because deliberate indifference requires that the defendant knows of and disregards an excessive risk to inmate safety, it is analogous to "recklessly disregarding that risk." *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 686 (6th Cir. 2013) (quoting *Farmer v. Brennan,* 511 U.S. 825, 836 (1994)). A reasonable jury could find that Starks recklessly disregarded Bell's serious medical need and thus had the required culpable state of mind to satisfy the second element.

Next, Bell can also satisfy the causation element. Although "[s]uicide may be a superseding proximate cause of an injury[,]" if the act of suicide was a reasonably foreseeable consequence of the defendant's action, then the defendant may be found liable. *Est. of Sdao ex rel. Sdao v. Makki & Abdallah Invs.,* No. 322646, 2016 WL

21

279635, at *2 (Mich. Ct. App. Jan. 21, 2016) (citing *Cooper v. Washtenaw Co.*, 270 Mich. App. 506, 509-510 (2006)).[2]  If the defendant's actions increased the likelihood that an intervening cause will occur, then the intervening cause may be reasonably foreseeable. *Id.*  The question becomes whether the defendant anticipated or reasonably should have anticipated the intervening cause.  *Id.* Accepting Bell's testimony as true, a reasonable jury could find that Starks anticipated, or reasonably should have anticipated, that Bell's attempted suicide was a foreseeable consequence of her actions.

The remaining question then is whether Bell experienced severe emotional distress.  Defendant cites to *Johnson v. Mount Pleasant Pub. Sch.,* 745 F. Supp. 3d. 479 (E.D. Mich. 2024) in her brief to contend that Bell has not shown evidence that he indeed suffered extreme emotional distress.  ECF No. 76, PageID.589-590.  But respectfully, a suicide attempt, by its very nature, constitutes compelling evidence of such distress.  *See Dickerson v. Nichols*, 161 Mich. App. 103, 107 (Mich. App. 1987) ("Comment j of the Restatement states that emotional distress

---

[2] Although *Sdao* addressed a negligence claim, its reasoning regarding proximate cause and foreseeability is equally instructive in an IIED claim.

'includes all highly unpleasant mental reactions. . . .'"); *see also, e.g.*, *Mullin*, 2019 WL 2315044, at *11 (assuming without analysis that attempted suicide is severe emotional distress).

Therefore, Starks is not entitled to governmental immunity with respect to the IIED claim, and genuine disputes of fact remain on several of the elements. Defendant's motion for summary judgment on the IIED claim is **DENIED.**

## VI.  CONCLUSION

Therefore, the Court **GRANTS** the motion **IN PART** and **DENIES** it **IN PART**.

**SO ORDERED**.


Date: August 4, 2025                           s/F. Kay Behm
                                               F. Kay Behm
                                               United States District Judge